ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 23 2019

at ___ o'clock and ___ min ___ M
SUE BEITIA, CLERK

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

THOMAS J. BRADY #4472
MARSHALL H. SILVERBERG #5111
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  Tom.Brady@usdoj.gov
          Marshall.Silverberg@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL WALKER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CR. NO. 19-00136 SOM<br><br>MEMORANDUM OF PLEA<br>AGREEMENT<br><br>DATE:   September 23, 2019<br>TIME:   10:30 a.m.<br>JUDGE: Hon. Susan O. Mollway |

**MEMORANDUM OF PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, MICHAEL WALKER, and his attorney,

Birney B. Bervar, Esq., have agreed upon the following:

## THE CHARGES

1.     The defendant acknowledges that he has been charged in a two-count

Superseding Indictment in Cr. No. 15-00293 with: (1) First Degree Murder, and

aiding and abetting the First Degree Murder of, his wife, Catherine Walker; and (2)

with conspiring with Ailsa Jackson to commit the First Degree Murder of

Catherine Walker.   The trial on those charges is scheduled to begin on October 1,

2019.

2.     The defendant further acknowledges that instead of proceeding to trial

on the charges contained in the Superseding Indictment in Cr. No. 15-00293, he

will plead guilty to an Information that has been or will be filed, charging him with

one count of aiding and abetting the Second Degree Murder of his wife, Catherine

Walker, in violation of Title 18, United States Code, Sections 2, 7(3), and 1111(a)

and (b).

3.     The defendant has read the charge against him contained in the

Information, and that charge has been fully explained to him by his attorney.

2

4.     The defendant fully understands the nature and elements of the crime with which he has been charged.

## THE AGREEMENT

5.     The defendant agrees to waive indictment and enter a voluntary plea of guilty to the Information, which charges him while aiding and abetting another person, did with malice aforethought unlawfully kill Catherine Walker, in violation of Title 18, United States Code, Sections 2, 7(3), and 1111(a) and (b). The defendant is aware that he has the right to have this felony offense first presented to a grand jury for an indictment.   The defendant hereby waives this right and consents that this offense may be charged against him by way of the Information. In return, the government agrees to move to dismiss Counts 1 and 2 of the Superseding Indictment in Cr. No. 15-00293 SOM as to the defendant after sentencing.   The parties further agree to stipulate to the sentencing terms set forth below in paragraph 10.

6.     The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

7.     The defendant enters this plea because he is in fact guilty of aiding and abetting, with malice aforethought, the unlawful killing of his wife, Catherine

3

Walker, as charged in the Information, and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

8.      The defendant understands that the penalties for the offense to which he is pleading guilty include:

a.      A term of imprisonment of any term of years or for life and a fine of up to $250,000, plus a term of supervised release of not less than 5 years and up to life.

b.      In addition, the Court must impose a $100 special assessment as to the count to which the defendant is pleading guilty.   The defendant agrees to pay $100 for the count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

c.      **Restitution.**   The Court must also award restitution pursuant to Title 18, United States Code, Sections 2259 and 3663A, to the persons and entities victimized by the defendant's offense.   The defendant understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and

4

entities entitled to such restitution, with the assistance of the United States Probation Office.   The defendant agrees to pay restitution for all losses caused by the defendant's conduct, regardless of whether the counts of the Superseding Indictment associated with such losses will be dismissed as part of this Agreement.

## FACTUAL STIPULATIONS

9.   The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

a.   After meeting through an on-line posting on September 4, 2014, the defendant and Ailsa Jackson ("Jackson") began having an affair.   Thereafter, the defendant and Jackson communicated extensively via text messaging and emails.   The defendant informed Jackson that he was married.

b.   Throughout the course of their relationship, Jackson shared with the defendant that she was mentally ill and that she had bad thoughts and heard voices.

c.   On September 12, 2014, the defendant's wife, Catherine Walker, left Hawaii for a trip to the United States mainland.   Later that same day, the defendant invited Jackson to come to his home and have sex.   She agreed and they had sex that day and almost each day thereafter while Catherine Walker was

5

on the mainland. Catherine Walker returned to Hawaii on September 27, 2014.

        d.    On September 19, 2014, the defendant informed Jackson that his "biggest" or "deepest" desire was to have his wife "gone." By using the word, "gone," and in the context of that conversation and subsequent conversations, the defendant made it clear to Jackson that he wanted her to kill his wife. Jackson asked the defendant why he didn't just divorce his wife. The defendant responded that due to financial concerns, he did not want to divorce his wife. The defendant also informed Jackson that he wanted his wife dead because he stood to gain $400,000 in life insurance proceeds if she were dead.

        e.    The next day, September 20, 2014, the defendant and Jackson exchanged the following text messages:

> **Jackson**: "Good morning. I'm not saying no but I[] can't say yes til I know how serious you are about what we talked about."
>
> **The defendant**: "I'm dead serious."
>
> **Jackson**: "Good cause I am too."

At that point, the parties agree that the defendant and Jackson entered into an agreement whereby Jackson would kill Catherine Walker because the defendant wanted her to do so.

        f.    On September 21, 2014, Jackson and the defendant exchanged the following text messages:

6

> **Jackson**: "So answer me this why do you want your biggest desire to happen?"
>
> **The defendant**: "How about I just say, Yes! Just not something I want to answer in a text or over the phone."
>
> **Jackson**: "I know.   I want you to think about it and tell me."
>
> **The defendant**: "Ok.   I will answer you, but out of curiosity, will it matter?"
>
> **Jackson**: "Right now all I can say is no."
>
> **The defendant**: "Ok, cool."

g.      In the days and weeks which followed that exchange on September 21, 2014, the defendant and Jackson had multiple conversations in person where they discussed how and when Jackson would kill Catherine Walker. The defendant made it clear that he wanted Jackson to kill his wife while he was at work so he would have an alibi.   The defendant also told Jackson that they should cease their communications after the murder.   The defendant also instructed Jackson to delete all text messages, emails, pictures and contact information from their respective cellular telephone devices between the two after the murder occurred.

h.      During September and October 2014, the defendant had multiple affairs with others, including with men who paid him for sex and to fulfill their sexual fantasies.   One of these men (but who did not pay him for sex) was

7

someone with the initials B.S.   During an exchange of text messages on October 12, 2014, the defendant informed B.S. that Catherine Walker did not know that he was bisexual and having affairs with men.   He added:

> **The defendant**: "It's hard to sneak around sometimes.   I just want to be free to live life how I want to."

i.        Later that same day, after informing B.S. that he "want[s] to be free to live life how I want to," the defendant had the following exchange of text messages with Jackson:

> **Jackson**: "I want you so bad its like a craving."

> **The defendant**: "I know.   Me too.   If only someone was out of the way!"

> **Jackson**:   "Yea I know."

j.        On October 29, 2014, the defendant and Jackson exchanged the following text messages:

> **Jackson**:   "I wish I can see you soon.   Its so frustrating knowing whats in the way.   Its so simple yet so complex.   Uggg"

> **The defendant**:   "[Y]es, there's one simple thing in the way."

During the time period of September through November 2014, the defendant was a Sergeant with the United States Army, employed as a medic at Tripler Army Medical Center (TAMC).   He worked in the emergency room at TAMC.

      k.     On or about November 2, 2014, the defendant went from

working a day shift to working the night shift.   As such, the defendant would be at

TAMC between the hours of 6:00 p.m. until 6:00 a.m. the next morning.   During

that time period, Catherine Walker would be at home sleeping.   The defendant

knew that his wife was a heavy sleeper and that Jackson would likely be able to

enter his home without waking Catherine Walker.

      l.     On November 3, 2014, Jackson sent the following email to the

defendant:

> **Jackson**: "Hey I te[x]ted you.   I need to talk to you about your
> desire.   I am in between helping you and the fact that my ex is ready
> to buy me a ticket for January.   Every day is getting harder and
> harder."

> [Note: the defendant responded by email but that email has not been
> recovered by law enforcement].

      m.    On November 4, 2014, the defendant and Jackson exchanged

the following emails:

> **Jackson**:   "I feel that we should talk this out.   We need to go over
> the details.   At least what will happen before and after.   I feel like
> there is a growing gap or barrier.   I'm trying to be good.   The
> anticipation is exhausting.   The thrill is faltering.   I'm growing
> impatien[t], tired, and hungry for action.   With all this said I will not
> act until you need my help.   Until your permission is given."

> **The defendant**:   "I understand.   I know we need to talk.   And you
> have my permission.   The sooner the better."

n.   On November 10, 2014, the defendant, his wife, and others went on a hike.   While they were hiking, the defendant's car was broken into and some of the contents of the defendant's wallet were stolen.   This break-in made Catherine Walker very concerned about sleeping alone at night while the defendant was working.   She was very careful in checking the doors and windows to make certain they were locked before she went to sleep while her husband was working at TAMC.

o.   Later that day, November 10, 2014, the defendant and Jackson exchanged the following text messages:

**The defendant**:   "How are you?"

**Jackson**:   "I'm ok.   A little nervous."

**The defendant**:   "Why are you nervous"

**Jackson**:   "Not knowing what will happen in the future.   Thinking about things like your desire."

**The defendant**:   "I understand."

p.   The next night, November 11, 2014, Jackson went to the defendant's residence with the intent to murder Catherine Walker.   However, she found that the doors to the back of the house were locked and she could not otherwise enter the residence.   As a result, she left the Walker residence and returned home without attempting to kill Catherine Walker.

10

q.      The next day, November 12, 2014, the defendant and Jackson

exchanged the following text messages:

**The defendant**:   "I need you!!   I want you.   I need my desire taken care of soon.   I'[m] going crazy."

**Jackson**:   "I need you too.   I know daddycakes.   I was going to but ran into a problem."

**The defendant**:   "What kinda problem"

**Jackson**:   "Umm I guess I would call it an access problem"

**The defendant**:   "Oh, I see.   I can help with that."

r.      The next day, November 13, 2014, the defendant and Jackson

exchanged the following text messages:

**The defendant**:   "Hey babygirl!!"

**Jackson**:   "How are you?"

**The defendant**:   "I'm ok.   How are you?"

**Jackson**.   "I'm Ok."

**The defendant**:   "Yea, I did a test and it gets checked.   So it'll have to be window."

**Jackson**:   "Ok."

**The defendant**:   "I'll take care of one near the back."

**Jackson**: "Ok.   I wish I can see you so we can talk more."

**The defendant**:   "I know.   Me too."

11

s.     Later that day, on November 13, 2014, the defendant and
Jackson exchanged the following text messages:

**The defendant**:  "Hey what are you doing around 1-1:30 ish
tomorrow?"

**Jackson**:  "Nothing."

**The defendant**:  "We can meet then briefly."

t.     The next day, on November 14, 2014, the defendant and
Jackson exchanged the following text messages:

**Jackson**:  "Hi daddycakes"

**The defendant**:  "Hey babygirl"

**Jackson**:  "Will I get to see you?"

**The defendant**:   "Meet me at normal meeting place in about 20-25
minutes."

**Jackson**:  "Yes daddy"

**The defendant**:  "Good girl"

**The defendant**: (1:46 p.m.):   "I'll be there in 5 minutes entering the
front gate."

**Jackson**: (1:46 p.m.): "Ok daddy.   I'm here enjoying the sunshine."

**The defendant**: (1:47 p.m.):   "Nice.   Pulling in now."

12

u.     On November 14, 2014, at about 1:50 p.m., the defendant and

Jackson met at their "usual meeting place" which was the Aliamanu Military

Reservation gym parking lot.   At that time, the defendant requested, and Jackson

agreed, that Jackson would kill Catherine Walker that night.   They then discussed

how Jackson would get into the Walker residence to kill Catherine Walker.   The

defendant told Jackson that he would try to leave a window open and that if he

could not, then he would leave the key to the back door, by the laundry room, in

the gravel outside of the residence by the back door.   The defendant informed

Jackson that he would send her a text with either the word "good," meaning she

could use the window, or "bad," meaning she would have to use the back door.

v.     Later that same day, November 14, 2014, at approximately 2:22

p.m., the defendant texted the word "bad" to Jackson.   That meant that the

defendant would leave a key to the Walker residence in the gravel outside the back

laundry room door.   The defendant acknowledges and admits that he knew that

Jackson would use that key to open the back yard laundry door to his house in

order to gain entry so that she could kill Catherine Walker while she slept upstairs

in their bedroom.

w.     Later that night, at around 11:30 p.m., Jackson left her

residence and walked to the Walker residence.   Upon arriving, Jackson went to the

13

back of the house, found the key to the back door in the gravel, and used the key to gain entry into the residence.   Upon entering the residence, Jackson grabbed a long sharp knife from the kitchen.   She then proceeded to go upstairs to where Catherine Walker was sleeping and stabbed Catherine Walker multiple times and killed her.   While this occurred, the defendant was working his shift in the emergency room at TAMC, trying to provide an alibi for himself in case his wife had been murdered during the night by Jackson as per their agreement.

        x.    Upon his return to the residence the following morning at around 6:30 a.m., and seeing his deceased wife, the defendant called "911."

        y.    At around midnight on November 14, 2014, Jackson killed Catherine Walker with malice aforethought.   The defendant, with malice aforethought, aided and abetted that unlawful killing of Catherine Walker by counseling, commanding, and inducing Jackson to kill Catherine Walker. On November 14, 2014, the final day of Catherine Walker's life, the defendant aided and abetted Jackson by making available to Jackson the house key to the Walker residence.   The unlawful killing took place in Catherine Walker's home, located on Aliamanu Military Reservation, which is within the special maritime and territorial jurisdiction of the United States.

14

z.      On November 15, 2014, at the direction of the defendant, Jackson deleted all of her text messages, emails and pictures to or from the defendant and his contact information from her cellular telephone. Likewise, on or before November 15, 2014, the defendant deleted all of his text messages, emails and pictures to or from Jackson and her contact information from his cellular telephone in an effort to dissociate himself from Jackson because he knew Jackson intended to kill Catherine Walker. Many, but not all of those deleted text messages and emails were recovered by law enforcement through the use of forensic digital technology and the execution of search warrants.

10.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

11.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

15

a.     Pursuant to the Federal Rules of Criminal Procedure (FRCP)

Rule 11(c)(1)(B), the parties agree that at sentencing, the applicable sentencing

range will be a term of imprisonment of **292 – 365 months imprisonment**, plus a

term of supervised release of 5 years.   The parties' calculation is based upon the

following stipulations regarding the offense level:

   i.   The base offense level for Murder in the Second Degree is 38,

        pursuant to United States Sentencing Guidelines (USSG) §

        2A1.2;

  ii.   A 2-level enhancement based on defendant's role in the offense

        as "an organizer, leader, manager, or supervisor in any criminal

        activity…," pursuant to U.S.S.G. § 3B1.1(c );

 iii.   The government agrees that a 2-level enhancement pursuant to

        U.S.S.G. § 3C1.1 (Obstruction or Impeding the Administration

        of Justice) is not warranted;

  iv.   A 2-level reduction for acceptance of responsibility, pursuant to

        U.S.S.G. § 3E1.1(a).   The defendant acknowledges that he is

        not entitled to the third level reduction for "super" acceptance

        of responsibility because he did not timely notify authorities of

        his intention to enter a plea of guilty, thereby permitting the

16

government to avoid preparing for trial and permitting the

government and the court to allocate their resources efficiently;

v.   A criminal history category of III, based upon defendant's prior

felony convictions and pursuant to U.S.S.G. § 4A1.1;

vi.   The parties agree that the total offense level is 38, Criminal

history category III, with a U.S.S.G. sentencing range of 292 –

365 months;

vii.   The defendant cannot move for a downward departure or

variance and the government cannot move for an upward

departure or variance.   The lowest sentence the defendant can

seek is 292 months and the greatest sentence the government

can seek is 365 months; and

viii.   Finally, the parties agree to recommend to the Court that the

defendant's federal sentence run concurrent to any sentence

imposed by the U.S. Army Military Court of Justice, though the

government cannot guarantee that outcome.   The defendant

agrees that he will not be entitled to withdraw his guilty plea

even if the Court disagrees with the government's

recommendation that the defendant's federal sentence run

17

concurrent to any sentence imposed by the U.S. Army Military

Court of Justice.

12.     The parties agree that notwithstanding the parties' Agreement herein,

the Court is not bound by any stipulation entered into by the parties but may, with

the aid of the presentence report, determine the facts relevant to sentencing.   The

parties understand that the Court's rejection of any stipulation between the parties

does not constitute a refusal to accept this Agreement since the Court is expressly

not bound by stipulations between the parties.

13.     The parties represent that as of the date of this agreement there are no

material facts in dispute.

## APPEAL/COLLATERAL REVIEW

14.     The defendant is aware that he has the right to appeal his conviction

and the sentence imposed.   The defendant knowingly and voluntarily waives the

right to appeal, except as indicated in subparagraph "b" below, his conviction and

any sentence within the Guidelines range as determined by the Court at the time of

sentencing, and any lawful restitution order imposed, or the manner in which the

sentence or restitution order was determined, on any ground whatsoever, in

exchange for the concessions made by the prosecution in this Agreement.   The

18

defendant understands that this waiver includes the right to assert any and all legally waivable claims.

    a.    The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

    b.    If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

    c.    The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

15.    In connection with the collection of restitution or other financial obligations that may be imposed upon him, the defendant agrees as follows:

19

a.   The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or

remedy, constitute the defendant's failure to accept responsibility under U.S.S.G §
3E1.1.

      b.    The defendant expressly authorizes the United States
Attorney's Office to obtain his credit report.   The defendant agrees to provide
waivers, consents, or releases requested by the United States Attorney's Office to
access records to verify the financial information, such releases to be valid for a
period extending 90 days after the date of sentencing.   The defendant also
authorizes the United States Attorney's Office to inspect and copy all financial
documents and information held by the USPO.

      c.    Prior to sentencing, the defendant agrees to notify the Financial
Litigation Unit of the U.S. Attorney's Office before making any transfer of an
interest in property with a value exceeding $1,000 owned directly or indirectly,
individually or jointly, by the defendant, including any interest held or owned
under any name, including trusts, partnerships, and corporations.

## IMPOSITION OF SENTENCE

16.    The defendant understands that the District Court in imposing
sentence will consider the provisions of the Sentencing Guidelines.   The defendant
agrees that there is no promise or guarantee of the applicability or non-applicability

of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

17. The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary. The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## **WAIVER OF TRIAL RIGHTS**

18. The defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

22

b.     If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.     If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.     At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.     At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

19.     The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

20.     If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The _only_ exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it.

24

Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21.    The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charge against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

22.    The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

23.    To become effective, this Agreement must be signed by all signatories listed below.

/ /

/ /

/ /

/ /

/ /

25

24.     Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.

DATED:   Honolulu, Hawaii, September 23, 2019.

AGREED:

KENJI M. PRICE
United States Attorney
District of Hawaii


_____          _____
KENJI M. PRICE                                        BIRNEY B. BERVAR
United States Attorney                              Attorney for Defendant


_____          _____
MARSHALL H. SILVERBERG                 MICHAEL WALKER
THOMAS J. BRADY                                 Defendant
Assistant U.S. Attorneys

26